CITY OF LONG BRANCH, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, ET AL., PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY AND MONMOUTH CONSOLIDATED WATER COMPANY, BODY CORPORATE, DEFENDANTS.

Argued January 20, 1942—Decided February 13, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutors, *Ward Kremer*.

For Monmouth Consolidated Water Co., *Aulenrieth & Worlendyke (Joseph F. Aulenrieth)* (*C. H. Dickey*, of the Iowa bar, on the brief).

BODINE, J. *Certiorari* was allowed to review a decision of the Board of Public Utility Commissioners permitting the

Monmouth Consolidated Water Company to increase its reve-
nues by some $86,000. The utility on November 14th, 1940,
filed with the Board a schedule of increased rates effective as
of January 1st, 1941. The Board suspended the proposed
rate pending a hearing pursuant to *N. J. S. A.* 48:2-21d,
and, after hearing, found the increase reasonable. The rate
went into effect and the municipalities adversely affected
contend that the proofs do not support the adjudication.

The utility was a consolidation of a number of small water
companies serving municipalities in Monmouth County, a
county bordering on the Atlantic Ocean and containing many
residences used only in the summer. There are 22,000 cus-
tomers served and the territory covered extends along the
ocean from Fort Monmouth to Bradley Beach. Emergency
connections are maintained with two municipal water plants
and water is sold wholesale to two other companies. There
are four pumping stations and the demand for water fluc-
tuates seasonally. A population of 180,000 people are pro-
vided with water in the summer. In the winter there is less
than half that number.

The capital structure is as follows: First Mortgage Five
Per Cent Gold Bonds (whatever that term means) Series A
due June 1st, 1956, $3,564,000; 1,857 $7 Cumulative pre-
ferred stock, stated value $185,000; 26,000 shares no par
value common stock, stated value $2,100,000. Open account
due American Water Works and Electric Company, the parent
company, as of March 31st, 1941, $456,000.

The company placed the value of its used and useful prop-
erty at $7,000,000, and claimed that by reason of the increased
municipal, state and federal taxes it had earned but 3.3%
in 1937; 3.4% in 1938; 3.8% in 1939 and 2.8% in 1940.

The Board, after carefully weighing the evidence, placed
the value of the property at $5,600,000. The probable operat-
ing revenue was fixed at $620,786, a trifle less than the objec-
tors' testimony suggested, and the probable loss from uncol-
lected water bills at $3,000 annually. An allowance for taxes
in the sum of $147,498 was made.

The following break down shows the result:

Operating revenues . . . . . . . . ~. . . . . . . . . . . . $651,608
Operating expenses . . . . . . . . . . . . $254,215
Uncollectible water bills . . . . . . . . . 3,000
Taxes . . . . . . . . . . . . . . . . . . . . . 147,498
—————— 404,713

Amount available for return . . . . . . . . . . . . . . $246,895

The present return the Board found was 4.4%. The utility desired a return of 6.34%. The Board decided that one of 5.52% was not unreasonable, and awarded an increase of rates to yield $86,000.

The first problem relates to the value of the property as fixed for rate making purposes. The Board considered costs, reproduction costs and the value as an assembled operating and going concern. Experts testified to all elements and their testimony varied on most points. We can hardly say, however, that the Board's findings have no support in the proofs. The Board considered all the proper elements. *New Jersey Suburban Water Co.* v. *Board of Public Utility Commissioners,* 123 *N. J. L.* 303. In parallel columns annexed to the decision are to be found the varying estimates of the different witnesses called. The weight of the testimony was for the Board and these findings are supported by the proofs.

Three points were specially pressed at the argument: One, that the company was paying entirely too much interest for its borrowed money. The answer was made that the utility is not in receipt of sufficient revenue to amortize any part of its debt, and that investors are not anxious to buy securities in companies which are in receipt of insufficient revenue to operate with certainty. The proofs do not show that the company could refinance its funded indebtedness and the large indebtedness to the parent company on open account would seem to make it unlikely.

Two, that the company pays the parent company too much for management service. The charge is 4% of its gross operating revenue. Stone & Webster charge for a similar service 1.95%. The management expense of the utility is high, being close to 10%. It is hardly a fair basis for com-

parison to state the figures of utilities operating in single municipality where the demand for its services are more constant. The Utility Board could not set aside the contract or reduce the yield thereon. Its function is all the factors considered to determine if the rate fixed is reasonable.

A rate too low results in inability to render efficient service. A rate too high is of disservice to the public. The same applies to the management contract. The officers of a business may, within reason, control its affairs. That other boards have differently viewed such items is no reason why the action under review was not proper. We are not at liberty to accept the objectors' testimony and reject that offered by the utility.

Three, it is urged that the Board improperly accepted a depreciation theory that was too low. The weight to be given to testimony as to reproduction cost and depreciation depends upon the circumstance of each particular case. The Board had proof to support the figures taken. In fact, the figures testified to by the witnesses for Utility and the objectors as to depreciation vary by less than $200,000. The substantial difference in result is caused by the inclusion in the estimate of cost of reproduction of property claimed by the objectors to be a duplication and not used or useful. The Board did not so find and it does not seem that they were obliged so to do. A utility obliged to give service cannot be required to have its rate based merely upon property on constant use. A degree of duplication in plant facilities is inevitable in any utility, particularly where there is a wide seasonal variation in demand for the service. Suffice it that the Board weighed all the testimony and arrived at a result supported by the proofs.

The writ will be dismissed, with costs.